Bunn *v*. Mitchell.

---

BUNN, Trustee, &c., and others, *vs.* MITCHELL and others.

*A trust estate, held under a deed of conveyance not declaring the trust, protected against a creditor of the trustee.*

Bill for relief. On final hearing on pleadings and proofs.

*Mr. A. A. Clark,* for complainants.

*Mr. J. Schomp,* for defendant Dunham.

THE CHANCELLOR.

The complainants, Hugh R. Bunn and his children, seek, by means of this suit, to restrain Calvin Dunham, who is the owner, by assignment from James F. Ballentine, of a judg-

ment recovered by the latter against Bunn, from levying upon and selling under execution on the judgment, a farm in Somerset county, occupied by Bunn and conveyed to him by his father's executors, or the produce thereof, or the implements thereon, belonging to the children. They seek also, to restrain him and the sheriff from proceeding at law against James D. Vanderveer, one of the coroners of the county of Somerset, in respect to a writ of replevin, executed by the latter and issued at the suit of Bunn, by virtue whereof the coroner took out of the hands of the sheriff, certain hay, standing corn and growing oats and a lot of manure, which the sheriff had levied on as the property of Bunn, under an execution on the judgment; and also from bringing suit on the replevin bond given to the coroner by Bunn, and from proceeding to recover the damages or costs of the replevin suit, out of the property of the children held in trust for them by Bunn, or the produce thereof. John Bunn, the father of Hugh R. Bunn, died in 1866. By his will, he ordered his executors to sell all his estate, real and personal, and after paying his debts and legacies, to divide the residue among his children and the children of his son, Hugh R. Bunn, and those of his deceased daughter, Ruth Baird; the children in each case, to take one share in the division; and he directed that the share of Hugh's children be given to him in trust for them, they to receive the benefit therefrom in their maintenance and education, and at his decease, to be equally divided among all of them.

It appears that, in 1867, the executors, under the power in the will, conveyed to Hugh, for the consideration of $7000, as expressed in the deed, a part of the testator's real estate. This consideration was made up as follows: $2500, which it was then estimated would be the amount of the share of Hugh's children; $2500, the share of his brother John, which Hugh proposed to secure to John by a mortgage on the property; $1500 due his sister Elmira from the estate, and which he proposed to secure in like manner; and $500 paid by Hugh's wife. The property thus conveyed remained in Hugh's possession, under the deed, until 1869, when he re-conveyed it to

the executors, at their request. It appears that the reason of the re-conveyance was, that Elmira refused to take the mortgage for $1500, which Hugh proposed to give her for so much of her interest in the estate, and it had been discovered that the deed to Hugh had not been so drawn as to protect the interest of his children in the property. It was, therefore, considered desirable that Hugh should re-convey the property, to the end that a new conveyance might be made of a less amount of land, an amount equal, or nearly so, in value to the amount of his children's share in the estate, and in such form as to protect the interest of the children, as *cestuis que trust* in the property in the hands of their father. Accordingly, the executors, by deed dated the next day after the re-conveyance, conveyed to Hugh part of the property conveyed by the former deed to him. In the new deed, the provision of the will in regard to the trust in favor of Hugh's children, was recited, but no trust was declared in it. The whole consideration of this conveyance was accounted for out of the share of the children. Hugh neither paid nor agreed to pay anything on account of it. This last deed, as before remarked, expressed no trust. The parties to it, however, supposed that it did, until about the time when the levy was made. Mr. Mitchell, one of the executors, says, referring to the conveyance, "We intended to secure this (the property) to the children, and obtained the services of a lawyer to do this business. We intended to convey it for the benefit of the children, and supposed we did so." There seems to be no room to doubt that all the parties to the deed supposed that it conveyed the property to Hugh in trust for his children, on the trust declared in the will. The property was the homestead of John Bunn. Hugh resided there with his children, after the making of the last deed. He and they were partially supported by the produce of the property. It was by no means sufficient for the support of the children. The defendant Dunham, having obtained an assignment of the Ballentine judgment, (which was recovered prior to the testator's death,) and having caused execution to be issued upon it, the sheriff of Somerset levied

on the hay, corn, oats and manure above mentioned, all of which were produced on the property. Hugh, in order to protect the property levied on, brought an action of replevin, which resulted in a non-suit. The executors had power to sell the land bought by Hugh. He bought it with the money of the children. A trust results in their favor, and they have a right to have the deed reformed so as to declare the trust. The produce of the farm is therefore theirs. The complainants are entitled to the relief they seek. The evidence shows that Dunham knew, when he levied, that the property was held by Hugh in trust for the children. But whether he had notice or not, he has no equity against them. His debt was not contracted on the faith of Hugh's apparent ownership of the property, but was contracted before the testator's death. The children are entitled to be protected against him, and Hugh and his sureties are entitled to protection against the replevin bond, except so far as the value of the manure, (which I cannot, from any evidence before me, hold to belong to the children,) and the costs of the replevin suit are concerned.

There will be a decree, but without costs, declaring the trust and reforming the deed accordingly, and on the payment to Dunham of the value of the manure and the costs of the replevin suit, the injunction will be made perpetual.